Record and Return To:
Jeffrey A. Wurst, Esq.
RUSKIN MOSCOU FALTISCHEK, P.C.
1425 RXR Plaza
East Tower, 15th Floor
Uniondale, NY 11556

---

## MORTGAGE AND SECURITY AGREEMENT

BE IT KNOWN, that on this ____ day of June in the year 2010, BEFORE ME, A Notary Public in and for the Parish of Orleans, State of Louisiana, duly commissioned and qualified, and in the presence of the witnesses hereinafter named and undersigned, personally came and appeared:

> **MARKET STREET PROPERTIES, LLC**, a Louisiana limited liability company ("Mortgagor"), having an address of _____, and a federal taxpayer identification number with the last four digits of 7421, appearing herein through its undersigned duly authorized representative,

who declared and acknowledged that mortgagor is justly and truly indebted unto

> **MSP FINANCE, LLC**, a _____ limited liability company ("Mortgagee"), having an address of _____,

in representation whereof, said Mortgagor has made and subscribed promissory note dated this day to the order of Mortgagee, which said note after having been duly paraphed "Ne varietur" by me, said Notary, for identification herewith delivered to said Mortgagee, here present acknowledging receipt thereof and accepting these presents.

And the said Mortgagor further declared that said Mortgagor does by these presents bind and obligate said Mortgagor to pay and reimburse all attorneys' fees, together with all such costs, charges and expenses as the present or any future holder or holders of said note or notes shall or may incur or pay in the event of the non-payment of note or notes at maturity, or In case it should become necessary to place said note or notes in the hands of an attorney-at-law for collection suit or otherwise, said attorney's fees to be fixed at ten percent (10%) on the amount due or so in suit.

Now, therefore, in order to secure the full and final payment of said indebtedness in capital and interest, together with all costs, including the attorney's fees herein

stipulated, the said mortgagor executes this Mortgage and Security Agreement (the "Mortgage").

## ARTICLE 1
## PARTIES, PROPERTY AND DEFINITIONS

The following terms and references shall have the meanings indicated:

1.1     Bankruptcy Case.  The case commenced by Mortgagor in the United States Bankruptcy Court, Eastern District of Louisiana pursuant to Chapter 11 of the Bankruptcy Code, and captioned as *In re Market Street Properties, L.L.C.*, Case No. 09-14172.

1.2     Bankruptcy Court.  The United States Bankruptcy Court, Eastern District of Louisiana.

1.3     Chattels.  All goods, fixtures, inventory, equipment, building and other materials, supplies, and other tangible personal property of every nature, whether now owned or hereafter acquired by Mortgagor, used, intended for use, or reasonably required in the construction, development, or operation of the Property, together with all accessions thereto, replacements and substitutions therefor, and proceeds thereof.

1.4     1.2 Default.  Any matter which, with the giving of notice, passage of time, or both, would constitute an Event of Default.

1.5     1.3 Event of Default.  As defined in ARTICLE 5.

1.6     1.4 Intangible Personalty.  The right to use all trademarks and trade names and symbols or logos used in connection therewith, or any modifications or variations thereof, in connection with the operation of the improvements existing or to be constructed on the Property, together with all accounts, monies in the possession of Mortgagee (including without limitation proceeds from insurance, retainages and deposits for taxes and insurance), permits, contract rights (including, without limitation, rights to receive insurance proceeds) and general intangibles (whether now owned or hereafter acquired, and including proceeds thereof) relating to or arising from Mortgagor's ownership, use, operation, leasing, or sale of all or any part of the Property, specifically including but in no way limited to any right which Mortgagor may have or acquire to transfer any development rights from the Property to other real property, and any development rights which may be so transferred.

1.7     Leases.  Any and all leases, subleases and other agreements under the terms of which any person other than Mortgagor has or acquires any right to occupy or use the Property, or any part thereof,

2

1.8   <u>Loan</u>. Shall mean an amount up to $750,000 loaned by Mortgagee to Mortgagor pursuant to Order of the Bankruptcy Court evidenced by the Note and secured by the Loan Documents.

1.9   <u>Loan Documents</u>. The Note, this Mortgage and all other instruments and documents securing the Note, including, without limitation, the Assignment of Leases and Rents and Other Income contained herein along with each other document now or hereafter executed or delivered in connection with the transaction pursuant to which the Note has been executed and delivered. The term "Loan Documents" also includes all modifications, extensions, renewals, and replacements of each document referred to above.

1.10   <u>Mortgagee</u>. The Mortgagee named in the introductory paragraph of this Mortgage, whose legal address is _____, together with any future holder of the Note.

1.11   <u>Mortgagor</u>. The Mortgagor named in the introductory paragraph of this Mortgage, whose legal address is _____, together with any future owner of the Property or any part thereof or interest therein.

1.12   <u>Note</u>. That certain Mortgage Note of even date herewith made by Mortgagor and payable to the order of Mortgagee in the principal face amount of Seven Hundred Fifty Thousand and 00/100 Dollars ($750,000.00), the last payment under which is due on the Maturity Date, unless such due date is accelerated, together with all renewals, extensions, modifications and refinancings of such promissory note. All terms and provisions of the Note are incorporated by this reference in this Mortgage.

1.13   <u>Permitted Exceptions</u>. The matters set forth on Schedule B of that certain Title Insurance Proforma No. _____ issued by _____ prior to the date hereof.

1.14   <u>Property</u>. The tract or tracts of land described in Exhibit A attached hereto, and together with the following in accordance with Louisiana Civil Code Articles 463, 465, 466 and 472:

(a)   All buildings, structures, improvements, other constructions, and component parts now or hereafter located on such tract or tracts, as well as all rights-of-way, easements, servitudes, privileges, prescriptions, advantages and other appurtenances thereto;

(b)   Any land lying between the boundaries of such tract or tracts and the center line of any adjacent street, road, avenue, or alley, whether opened or proposed;

(c)   All of the rents, income, receipts, revenues, issues and profits of and from such tract or tracts and improvements;

(d)      All (i) water and water rights (whether decreed or undecreed, tributary, nontributary or not nontributary, surface or underground, or appropriated or unappropriated); (ii) ditches and ditch rights; (iii) spring and spring rights; (iv) reservoir and reservoir rights; and (v) shares of stock in water, ditch and canal companies and all other evidence of such rights, which are now owned or hereafter acquired by Mortgagor and which are appurtenant to or which have been used in connection with such tract or tracts or improvements:

(e)      All minerals, crops, timber, trees, shrubs, flowers, and landscaping features now or hereafter located on, under or above such tract or tracts;

(f)      All machinery, apparatus, equipment, fittings, fixtures (whether actually or constructively attached, and including all trade, domestic, and ornamental fixtures) now or hereafter located in, upon, or under such tract or tracts or improvements and used or usable in connection with any present or future operation thereof, including but not limited to all heating, air-conditioning, freezing, lighting, laundry, incinerating and power equipment; engines; pipes; pumps; tanks; motors; conduits; switchboards; plumbing, lifting, cleaning, fire prevention fire extinguishing, refrigerating, ventilating, cooking, and communications apparatus; boilers, water heaters, ranges, furnaces, and burners; appliances; vacuum cleaning systems; elevators; escalators; shades; awnings; screens; storm doors and windows; stoves; refrigerators; attached cabinets; partitions; ducts and compressors; rugs and carpets; draperies; and all additions thereto and replacements therefor;

(g)      All development rights associated with such tract or tracts, whether previously or subsequently transferred to such tract or tracts from other real property or now or hereafter susceptible of transfer from such tract or tracts to other real property;

(h)      All awards and payments, including interest thereon, resulting from the exercise of any right of eminent domain or any other public or private taking of, injury to, or decrease in the value of, any of such property; and

(i)      All other and greater rights and interests, of every nature in such tract or tracts and in the possession or use thereof and income therefrom, whether now owned or subsequently acquired by Mortgagor.

1.15    Secured Obligations.   All present and future obligations of Mortgagor to Mortgagee evidenced by or contained in the Note, this Mortgage and all other Loan Documents, whether stated in the form of promises, covenants, representations, warranties, conditions, or prohibitions or in any other form.  If the maturity of the Note secured by this Mortgage is accelerated, the Secured Obligations shall include an amount equal to any prepayment premium which would be payable under the terms of the Note as if the Note were prepaid in fill on the date of the acceleration.

4

## ARTICLE 2
## GRANTING CLAUSE

2.1 <u>Grant to Mortgagee</u>. As security for the Secured Obligations, Mortgagor hereby mortgages, assigns, pledges, and warrants unto Mortgagee the entire right, title, interest and estate of Mortgagor in and to the Property, whether now owned or hereafter acquired; TO HAVE AND TO HOLD the same, together with all and singular the rights, hereditaments, and appurtenances in anywise appertaining or belonging thereto, unto Mortgagee and Mortgagee's successors, substitutes and assigns forever. The Property is to remain so specifically mortgaged unto and in favor of Mortgagee until the full and final payment or discharge of the Secured Obligations, and Mortgagor is herein and hereby bound and obligated not to sell or alienate the Property to the prejudice of this act.

2.2 <u>Security Interest to Mortgagee</u>. As additional security for the Secured Obligations, Mortgagor hereby grants to Mortgagee a security interest in the Property, Chattels and Intangible Personalty. To the extent any of the Property, Chattels or the Intangible Personalty may be or have been acquired with funds advanced by Mortgagee under the Loan Documents, this security interest is a purchase money security interest. This Mortgage constitutes a security agreement under the Uniform Commercial Code of the state in which the Property is located (the "Code") with respect to any part of the Property, Chattels and Intangible Personalty that may or might now or hereafter be or be deemed to be personal property, fixtures or property other than real estate (all collectively hereinafter called "Collateral"); all of the terms, provisions, conditions and agreements contained in this Mortgage pertain and apply to the Collateral as fully and to the same extent as to any other property comprising the Property, and the following provisions of this Section shall not limit the generality or applicability of any other provisions of this Mortgage but shall be in addition thereto:

(a)     The Collateral shall be used by Mortgagor solely for business purposes, and all Collateral (other than the Intangible Personalty) shall be installed upon the real estate comprising part of the Property for Mortgagor's own use or as the equipment and furnishings furnished by Mortgagor, as landlord, to tenants of the Property;

(b)     The Collateral (other than the Intangible Personalty) shall be kept at the real estate comprising a part of the Property, and shall not be removed therefrom without the consent of Mortgagee (being the Secured Party as that term is used in the Code); and the Collateral (other than the Intangible Personalty) may be affixed to such real estate but shall not be affixed to any other real estate;

(c)     No financing statement covering any of the Collateral or any proceeds thereof is on file in any public office; and Mortgagor will, at its cost and expense, upon demand, furnish to Mortgagee such further information and will execute and deliver to Mortgagee such financing statements and other documents in form satisfactory to Mortgagee and will do all such acts and things as Mortgagee may at any time or from time to time reasonably request or as may be necessary or appropriate to

establish and maintain a perfected first-priority security interest in the Collateral as security for the Secured Obligations, subject to no adverse liens or encumbrances; and Mortgagor will pay the cost of filing the same or filing or recording such financing statements or other documents and this instrument in all public offices wherever filing or recording is deemed by Mortgagee to be necessary or desirable;

(d)     The terms and provisions contained in this Section and in Section 6.2 of this Mortgage shall, unless the context otherwise requires, have the meanings and be construed as provided in the Code; and

(e)     This Mortgage constitutes a financing statement under the Code with respect to the Collateral. As such, this Mortgage covers all items of the Collateral that are or are to become fixtures. The filing of this Mortgage in the UCC records of the parish where the Property is located shall constitute a fixture filing in accordance with the Code. Information concerning the security interests created hereby may be obtained at the addresses set forth in ARTICLE I of this Mortgage. Mortgagor is the "Debtor" and Mortgagee is the "Secured Party" (as those terms are defined and used in the Code) insofar as this Mortgage constitutes a financing statement.

2.3 Insurance Pledge.   As additional security for the Secured Obligations, Mortgagor hereby pledges to Mortgagee the right to receive proceeds attributable to the insurance loss of the Property, all as provided in Louisiana Revised States 9:5386.

2.4 Maximum Amount. The maximum amount of the Secured Obligations that may be outstanding at any time and from time to time that this Mortgage secures, including without limitation as a mortgage and as an assignment of leases, including all principal, interest and any expenses or advances incurred by Mortgagee under this Mortgage or the other Loan Documents and all other amounts including within the Secured Obligations, is _____ and 00/100 Dollars ($_____).

2.5 Maturity Date.   The Secured Obligations evidenced by the Note have an original maturity date of the earlier of (a) November 15, 2010; or (b) the effective date of a plan of reorganization which has been confirmed by an order of the Bankruptcy Court.

### ARTICLE 3
### MORTGAGOR'S REPRESENTATIONS AND WARRANTIES

3.1 Warranty of Title. Mortgagor represents and warrants to Mortgagee that:

(a)     Mortgagor has good and marketable title to the Property, and such ownership is free and clear of all liens, encumbrances, security interests and other claims whatsoever, subject only to the Permitted Exceptions;

(b)     Mortgagor is the sole and absolute owner of the Chattels and the Intangible Personalty, free and clear of all liens, encumbrances, security interests and other claims whatsoever, subject only to the Permitted Exceptions;

6

(c)　　　This Mortgage is a valid and enforceable first lien and security interest on the Property, Chattels and Intangible Personalty, subject only to the Permitted Exceptions;

(d)　　　Mortgagor, for itself and its successors and assigns, hereby agrees to warrant and forever defend, all and singular of the properly and property interests granted and conveyed pursuant to this Mortgage, against every person whomsoever lawfully claiming, or to claim, the same or any part thereof; and

The representations, warranties and covenants contained in this Section shall survive foreclosure of this Mortgage, and shall inure to the benefit of and be enforceable by any person who may acquire title to the Property, the Chattels, or the Intangible Personalty pursuant to any such foreclosure.

3.2 Due Authorization.　If Mortgagor is other than a natural person, then each individual who executes this document on behalf of Mortgagor represents and warrants to Mortgagee that such execution has been duty authorized by all necessary corporate, partnership, limited liability company or other action on the part of Mortgagor. Mortgagor represents that Mortgagor has obtained all consents and approvals required in connection with the execution, delivery and performance of this Mortgage;

3.3 Other Representations and Warranties.　Mortgagor represents and warrants to Mortgagee as follows:

(a)　　　Mortgagor is a limited liability company, duly organized, validly existing and in good standing under the laws of the State of Louisiana. Mortgagor is in good standing under the laws of the State of Louisiana;

(b)　　　The execution, delivery and performance by Mortgagor of the Loan Documents are within Mortgagor's power and authority and have been duly authorized by all necessary action;

(c)　　　This Mortgage is, and each other Loan Document to which Mortgagor is a party will, when delivered hereunder, be valid and binding obligations of Mortgagor enforceable against Mortgagor in accordance with their respective terms, except as limited by equitable principles, and bankruptcy, insolvency and similar laws affecting creditors' rights;

(d)　　　The execution, delivery arid performance by Mortgagor of the Loan Documents will not contravene any contractual or other restriction binding on or affecting Mortgagor and will not result in or require the creation of any lien, security interest, other charge or encumbrance (other than pursuant hereto) upon or with respect to any of its properties;

(e)      The execution, delivery and performance by Mortgagor of the Loan Documents does not contravene any applicable law; and

(f)      No authorization, approval, consent or other action by, and no notice to or filing with, any court, governmental authority or regulatory body is required for the due execution, delivery and performance by Mortgagor of any of the Loan Documents or the effectiveness of any assignment of any of Mortgagor's rights and interests of any kind to Mortgagee.

## ARTICLE 4
## MORTGAGOR'S AFFIRMATIVE COVENANTS

4.1     Payment of Note.  Mortgagor will pay all principal, interest, and other sums payable under the Note, on the date when such payments are due, without notice or demand.

4.2     Performance of Other Obligations.  Mortgagor will promptly and strictly perform and comply with all other covenants, conditions, and prohibitions required of Mortgagor by the terms of the Loan Documents.

4.3     Other Encumbrances.  Mortgagor will promptly and strictly perform and comply with all covenants, conditions, and prohibitions required of Mortgagor in connection with any other encumbrance affecting the Property, the Chattels, or the Intangible Personalty, or any part thereof, or any interest therein, regardless of whether such other encumbrance is superior or subordinate to the lien hereof.

4.4     Payment of Taxes.

(a)     Property Taxes. Mortgagor will pay, before delinquency, all taxes and assessments, general or special, which may be levied or imposed at any time against Mortgagor's interest and estate in the Property, the Chattels, or the Intangible Personalty. At Mortgagee's option, Mortgagee may retain the services of a firm to monitor the payment of all taxes and assessments relating to the Property, the cost of which shall be borne by Mortgagor.

(b)     Intangible Taxes.  If by reason of any statutory or constitutional amendment or judicial decision adopted or rendered after the date hereof, any tax, assessment, or similar charge is imposed against the Note, Mortgagee, or any interest of Mortgagee in any real or personal property encumbered hereby, Mortgagor will pay such tax, assessment, or other charge before delinquency and will indemnify Mortgagee against all loss, expense, or diminution of income in connection therewith.  In the event Mortgagor is unable to do so, either for economic reasons or because the legal provisions or decisions creating such tax, assessment or charge forbid Mortgagor from doing so, then the Note will, at Mortgagee's option, become due and payable in full upon thirty (30) days' notice to Mortgagor.

(c)   Right to Contest.  Notwithstanding any other provision of this Section, Mortgagor will not be deemed to be in default solely by reason of Mortgagor's failure to pay any tax, assessment or similar governmental charge so long as, in Mortgagee's judgment, each of the following conditions is satisfied:

(d)

(i)      Mortgagor is engaged in and diligently pursuing in good faith administrative or judicial proceedings appropriate to contest the validity or amount of such tax, assessment, or charge; and

(ii)     Mortgagor's payment of such tax, assessment, or charge would necessarily and materially prejudice Mortgagor's prospects for success in such proceedings; and

(iii)    Nonpayment of such tax, assessment, or charge will not result in the loss or forfeiture of any property encumbered hereby or any interest of Mortgagee therein; and

(iv)     Mortgagor deposits with Mortgagee, as security for such payment which may ultimately be required, a sum equal to the amount of the disputed tax, assessment or charge plus the interest, penalties, advertising charges, and other costs which Mortgagee estimates are likely to become payable if Mortgagor's contest is unsuccessful.

If Mortgagee determines that any one or more of such conditions is not satisfied or is no longer satisfied, Mortgagor will pay the tax, assessment, or charge in question, together with any interest and penalties thereon, within ten (10) days after Mortgagee gives notice of such determination.

4.5 Compliance with Laws, Etc.  Mortgagor shall comply in all material respects with all applicable laws, rules, regulations and orders, such compliance to include, without limitation, maintaining all permits and paying before the same become delinquent all taxes, assessments and governmental charges imposed upon Mortgagor or the Property.

4.6 Records and Books of Account.  Mortgagor shall keep accurate and complete records and books of account, in which complete entries will be made in accordance with generally accepted accounting principles consistently applied, reflecting all financial transactions relating to the Property.

4.7 Change of Executive Offices.  Mortgagor shall promptly notify Mortgagee if changes are made in the location of Mortgagor's primary executive offices.

4.8 <u>Further Assurances; Estoppel Certificates</u>. Mortgagor will execute and deliver to Mortgagee upon demand, and pay the costs of preparation and recording thereof, any further documents which Mortgagee may request to confirm or perfect the liens and security interests created or intended to be created hereby, or to confirm or perfect any evidence of the Secured Obligations. Mortgagor will also, within ten (10) days after any request by Mortgagee, deliver to Mortgagee a signed and acknowledged statement certifying to Mortgagee, or to any proposed transferee of the Secured Obligations, (a) the balance of principal, interest, and other sums then outstanding under the Note, and (b) whether Mortgagor claims to have any offsets or defenses with respect to the Secured Obligations and, if so, the nature of such offsets or defenses.

## ARTICLE 5
## EVENTS OF DEFAULT

Each of the following events will constitute an event of default (an "Event of Default") under this Mortgage:

5.1 <u>Failure to Pay Note</u>. Mortgagor's failure to make any payment when due under the terms of the Note or any other Loan Document,

5.2 <u>Other Obligations</u>. The failure of Mortgagor to properly perform any obligation contained herein or in any of the other Loan Documents (other than the obligation to make payments under the Note or the other Loan Documents) and the continuance of such failure for a period of ten (10) days following written notice thereof from Mortgagee to Mortgagor; provided, however, that if such failure is not curable within such ten (10) day period, then, so long as Mortgagor commences to cure such failure within such ten (10) day period and is continually and diligently attempting to cure to completion, such failure shall not be an Event of Default unless such failure remains uncured for thirty (30) days after such written notice to Mortgagor.

5.3 <u>Levy Against Property</u>. The levy against any of the Property, Chattels or Intangible Personalty, of any execution, attachment, sequestration or other writ.

5.4 <u>Liquidation</u>. The liquidation, termination or dissolution of Mortgagor or any other party directly or indirectly liable for the payment of the Secured Obligations, whether as maker, endorser, guarantor, surety, managing member or otherwise.

5.5 <u>Appointment of Receiver</u>. The appointment of a trustee or receiver for the assets, or any part thereof, of Mortgagor or any other person directly or indirectly liable for the Secured Obligations, whether as maker, endorser, guarantor, surety, managing member otherwise, or the appointment of a trustee or receiver for any real or personal property, or the like, or any part thereof, representing the security for the Secured Obligations.

5.6 <u>Assignments</u>. The making by Mortgagor or by any other person or entity directly or indirectly liable for the Secured Obligations, whether as maker, endorser,

guarantor, surety, managing member or otherwise, of a transfer in fraud of creditors or an assignment for the benefit of creditors.

5.7 <u>Dismissal, Conversion to Chapter 7 or Trustee Appointment.</u> Any final order entered by the Bankruptcy Court either (i) converting the Mortgagor's Chapter 11 case to a case under Chapter 7 or (ii) appointing a trustee or examiner (with expanded powers) in the Mortgagor's Chapter 11 case or (iii) dismissal of the Mortgagor's Bankruptcy Case.

5.8 <u>Change of Existing Management.</u> Any change in current management of the Mortgagor shall occur.

## ARTICLE 6
## MORTGAGEE'S REMEDIES

Immediately upon or any time after the occurrence of any Event of Default hereunder, Mortgagee may exercise any remedy available at law or in equity, including but not limited to those listed below and those listed in the other Loan Documents, in such sequence or combination as Mortgagee may determine in Mortgagee's sole discretion:

6.1 <u>Performance of Defaulted Obligations.</u> Mortgagee may make any payment or perform any other obligation under the Loan Documents which Mortgagor has failed to make or perform, and Mortgagor hereby irrevocably appoints Mortgagee as the true and lawful attorney-in-fact for Mortgagor to make any such payment and perform any, such obligation in the name of Mortgagor. All payments made and expenses (including attorneys' fees) incurred by Mortgagee in this connection, together with interest thereon from the date paid or incurred until repaid, will be part of the Secured Obligations and will be immediately due and payable by Mortgagor to Mortgagee. In lieu of advancing Mortgagee's own funds for such purposes, Mortgagee may use any funds of Mortgagor which may be in Mortgagee's possession, including but not limited to insurance or condemnation proceeds and amounts deposited for taxes, insurance premiums, or other purposes. Proceeds of any insurance or condemnation recoveries, and 100% of net asset sale proceeds (net of reasonable commissions and other reasonable costs and expenses of sale) shall be applied first to the balance outstanding under the Loan unless otherwise agreed to by Mortgagee.

6.2 <u>Enforcement of Security Interests.</u> Mortgagee may exercise all rights of a secured party under the Code with respect to the Chattels and the Intangible Personalty, including but not limited to taking possession of, holding, and selling the Chattels and enforcing or otherwise realizing upon any accounts and general intangibles. Any requirements for reasonable notice of the time and place of any public sale, or of the time after which any private sale or other disposition is to be made, will be satisfied by Mortgagee's giving of such notice to Mortgagor at least five (5) days prior to the time of any public sale or the time after which any private sale or other intended disposition is to be made.

6.3 <u>Foreclosure Against Property</u>.

(a) Mortgagee may bring an action in any court of competent jurisdiction to foreclose this Mortgage by executory or ordinary process.

(b) All fees, costs and expenses of any kind incurred by Mortgagee in connection with foreclosure of this Mortgage, including, without limitation, the costs of any appraisals of the Property obtained by Mortgagee, the cost of any title reports or abstracts, all costs of any receivership for the Property advanced by Mortgagee, and alt attorneys' and consultants' fees and expenses incurred by Mortgagee, shall constitute a part of the Secured Obligations and may be included as part of the amount owing from Mortgagor to Mortgagee at any foreclosure sale.

(c) The proceeds of any sale under this Section shall be applied first to the fees and expenses of the officer conducting the sale, and then to the reduction or discharge of the Secured. Obligations in such order and manner as Mortgagee may elect; any surplus remaining shall be paid over to Mortgagor or to such other person or persons as may be lawfully entitled to such surplus.

(d) Nothing in this Section dealing with foreclosure procedures or specifying particular actions to be taken by Mortgagee shall be deemed to contradict or add to the requirements and procedures now or hereafter specified by Louisiana law, and any such inconsistency shall be resolved in favor of Louisiana law applicable at the time of foreclosure.

(e) For purposes of seizure and sale under Louisiana executory process procedures, Mortgagor acknowledges the Secured Obligations and confesses judgment in favor of Mortgagee in the full amount of Mortgagor's outstanding Secured Obligations, in principal, interest, costs and attorney's fees. To the extent permitted under applicable Louisiana law, Mortgagor additionally waives: (1) the benefit of appraisal as provided in Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedures, and all other laws with regard to appraisal upon judicial sale; (2) the demand and three days delay as provided under Article 2721 of the Louisiana Code of Civil Procedure; (3) the notice of seizure as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; (4) the three days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil procedure; and (5) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil procedures.

(f) Mortgagor additionally agrees that, should Mortgagee foreclose under this Mortgage, Mortgagee may appoint itself or its nominee as a Keeper of the Premises as provided under La. R.S. §§ 9:5136 <u>et seq</u>. Mortgagor further agrees that such a Keeper shall be entitled to reasonable and customary compensation, and an amount not to exceed one-tenth of one (.1%) percent of the total indebtedness outstanding at the time of foreclosure, the amount of which compensation shall also be secured by the lien of this Mortgage.

(g) Mortgagor further agrees that, should it become necessary for Mortgagee to foreclose under this Mortgage, all declarations of fact, which are made under an authentic act before a Notary Public in the presence of two witnesses, by a person declaring such facts to lie within his or her knowledge, shall constitute authentic evidence for purposes of executory process and also for purposes of La. R.S. § 9:3509.1, La. R.S. § 9:3504(D)(6), and La. R.S. § 10:9-629, where applicable.

## ARTICLE 7
## ASSIGNMENT OF LEASES AND RENTS

7.1 <u>Assignment of Leases and Rents</u>.  Mortgagor hereby unconditionally and absolutely grants, transfers and assigns unto Mortgagee all rents, royalties, issues, profits and income ("Rents") now or hereafter due or payable for the occupancy or use of the Property, and all Leases, whether written or oral, with all security therefor, including all guaranties thereof, now or hereafter affecting the Property; reserving unto Mortgagor, however, a license to collect and retain such Rents prior to the occurrence of any Event of Default.  Such license shall be revocable by Mortgagee without notice to Mortgagor at any time after the occurrence of an Event of Default.  Mortgagor represents that the Rents and the Leases have not been heretofore sold, assigned, transferred or set over by any instrument now in force and will not at any time during the life of this assignment be sold, assigned, transferred or set over by Mortgagor or by any person or persons whomsoever; and Mortgagor has good right to sell, assign, transfer and set over the same and to grant to and confer upon Mortgagee the rights, interest, powers and authorities herein granted and conferred.  Failure of Mortgagee at any time or from time to time to enforce the assignment of Rents and Leases under this Section shall not in any manner prevent its subsequent enforcement, and Mortgagee is not obligated to collect anything hereunder, but is accountable only for sums actually collected.

7.2   <u>Further Assignments</u>.  Mortgagor shall give Mortgagee at any time upon demand any further or additional forms of assignment or transfer of such Rents, Leases and security as may be reasonably requested by Mortgagee, and shall deliver to Mortgagee executed copies of all such Leases and security.

7.3   <u>Application of Rents</u>.  Mortgagee shall be entitled to deduct and retain a just and reasonable compensation from monies received hereunder for its services or that of its agents in collecting such monies.  Any monies received by Mortgagee hereunder may be applied when received from time to time in payment of any taxes, assessments or other liens affecting the Property regardless of the delinquency, such application to be in such order as Mortgagee may determine, The acceptance of this Mortgage by Mortgagee or the exercise of any rights by it hereunder shall not be, or be construed to be, an affirmation by it of any Lease nor an assumption of any liability under any Lease.

7.4   <u>Collection of Rents</u>.  Upon or at any time after an Event of Default shall have occurred and be continuing, Mortgagee may declare all sums secured hereby immediately due and payable, and may, at its option, without notice, and whether or not the Secured Obligations shall have been declared due and payable, either in person or by

agent, with or without bringing any action or proceeding, or by a receiver to be appointed by a court, (a) enter upon, take possession of, manage and operate the Property, or any part thereof (including without limitation making necessary repairs, alterations and improvements to the Property); (b) make, cancel, enforce or modify Leases; (c) obtain and evict tenants; (d) fix or modify Rents; (e) do any acts which Mortgagee deems reasonably proper to protect the security thereof; and (f) either with or without taking possession of the Property, in its own name sue for or otherwise collect and receive such Rents, including those past due and unpaid. In connection with the foregoing, Mortgagee shall be entitled and empowered to employ attorneys, and management, rental and other agents in and about the Property and to effect the matters which Mortgagee is empowered to do, and in the event Mortgagee shall itself effect such matters, Mortgagee shall be entitled to charge and receive reasonable management, rental and other fees therefor as may be customary in the area in which the Property is located; and the reasonable fees, charges, costs and expenses of Mortgagee or such persons shall be additional Secured Obligations. Mortgagee may apply all funds collected as aforesaid, less costs and expenses of operation and collection, including reasonable attorneys' and agents' fees, charges, costs and expenses, as aforesaid, upon any Secured Obligations, and in such order as Mortgagee may determine. The entering upon and taking possession of the Property, the collection of such Rents and the application thereof as aforesaid shall not cure or waive any default or waive, modify or affect notice of default under the Note or this Mortgage or invalidate any act done pursuant to such notice.

7.5   Authority of Mortgagee. Any tenants or occupants of any part of the Property are hereby authorized to recognize the claims of Mortgagee hereunder without investigating the reason for any action taken by Mortgagee, or the validity or the amount of secured obligations owing to Mortgagee, or the existence of any default in the Note or this Mortgage, or under or by reason of this Assignment of Rents and Leases, or the application to be made by Mortgagee of any amounts to be paid to Mortgagee. The sole signature of Mortgagee shall be sufficient for the exercise of any rights under this assignment and the sole receipt of Mortgagee for any sums received shall be a full discharge and release therefor to any such tenant or occupant of the Property. Checks for all or any part of the rentals collected under this assignment of Rents and Leases shall be drawn to the exclusive order of Mortgagee.

7.6   Indemnification of Mortgagee. Nothing herein contained shall be deemed to obligate Mortgagee to perform or discharge any obligation, duty or liability of any lessor under any Lease of the Property, and Mortgagor shall and does hereby indemnify and hold Mortgagee harmless from any and all liability, loss or damage which Mortgagee may or might incur under any Lease or by reason of the assignment; and any and all such liability, loss or damage incurred by Mortgagee, together with the costs and expenses, including reasonable attorneys' fees, incurred by Mortgagee in defense of any claims or demands therefor (whether successful or not), shall be additional Secured Obligations, and Mortgagor shall reimburse Mortgagee therefor on demand.

## ARTICLES
## MISCELLANEOUS PROVISIONS

8.1   Time of the Essence. Time is of the essence with respect to all provisions of the Loan Documents.

8.2   Joint and Several Obligations. If Mortgagor is more than one person or entity, then (a) all persons or entities comprising Mortgagor are solidarily and jointly and severally liable for all of the Secured Obligations; (b) all representations, warranties, and covenants made by Mortgagor shall be deemed representations, warranties, and covenants of each of the persons or entities comprising Mortgagor; (c) any breach, Default or Event of Default by any of the persons or entities comprising Mortgagor hereunder shall be deemed to be a breach, Default, or Event of Default of Mortgagor; (d) any reference herein contained to the knowledge or awareness of Mortgagor shall mean the knowledge or awareness of any of the persons or entities comprising Mortgagor; and (e) any event creating personal liability of any of the persons or entities comprising Mortgagor shall create personal liability for all such persons or entities.

8.3   Waiver of Homestead and Other Exemptions. To the extent permitted by law, Mortgagor hereby waives all rights to any homestead or other exemption to which Mortgagor would otherwise be entitled under any present or future constitutional, statutory, or other provision of applicable state or federal law. Mortgagor hereby waives any right it may have to require Mortgagee to marshal all or any portion of the security for the Secured Obligations.

8.4   Non Recourse; Exceptions to Non-Recourse. Except as expressly set forth in the Note, the recourse of Mortgagee with respect to the obligations evidenced by the Note and the other Loan Documents shall be solely to the Property, Chattels, Intangible Personalty, and Rents, and any other collateral given as security for the Note.

8.5   Rights and Remedies Cumulative. Mortgagee's rights and remedies under each of the Loan Documents are cumulative of the rights and remedies available to Mortgagee under each of the other Loan Documents and those otherwise available to Mortgagee at law or in equity. No act of Mortgagee shall be construed as an election to proceed under any particular provision of any Loan Document to the exclusion of any other provision in the same or any other Loan Document, or as an election of remedies to the exclusion of any other remedy which may then or thereafter be available to Mortgagee.

8.6   No Implied Waivers. Mortgagee shall not be deemed to have waived any provision of any Loan Document unless such waiver is in writing and is signed by Mortgagee. Without limiting the generality of the preceding sentence, neither Mortgagee's acceptance of any payment with knowledge of a Default by Mortgagor, nor any failure by Mortgagee to exercise any remedy following a Default by Mortgagor shall be deemed a waiver of such Default, and no waiver by Mortgagee of any particular

Default on the part of Mortgagor shall be deemed a waiver of any other Default or of any similar Default in the future.

8.7   No Third Party Rights.  No person shall be a third party beneficiary of any provision of any of the Loan Documents.  All provisions of the Loan Documents favoring Mortgagee are intended solely for the benefit of Mortgagee, and no third party shall be entitled to assume or expect that Mortgagee will not waive or consent to modification of any such provision in Mortgagee's sole discretion.

8.8   Preservation of Liability and Priority.  Without affecting the liability of Mortgagor or of any other person (except a person expressly released in writing) for payment and performance of all of the Secured Obligations, and without affecting the rights of Mortgagee with respect to any security not expressly released in writing, and without impairing in any way the priority of this Mortgage over the interests of any person acquired or first evidenced by recording subsequent to the recording hereof, Mortgagee may, either before or after the maturity of the Note, and without notice or consent:  (a) release any person liable for payment or performance of all or any part of the Secured Obligations; (b) make any agreement altering the terms of payment or performance of all or any of the Secured Obligations; (c) exercise or refrain from exercising, or waive, any right or remedy which Mortgagee may have under any' of the Loan Documents; (d) accept additional security of any kind for any of the Secured Obligations; or (e) release or otherwise deal with any real or personal property securing the Secured Obligations.  Any person acquiring or recording evidence of any interest of any nature in the Property, the Chattels, or the Intangible Personalty shall be deemed, by acquiring such interest or recording any evidence thereof, to have agreed and consented to any or all such actions by Mortgagee.

8.9   Subrogation of Mortgagee.  Mortgagee shall be subrogated to the lien of any previous encumbrance discharged with funds advanced by Mortgagee under the Loan Documents, regardless of whether such previous encumbrance has been released of record.

8.10   Notices.  Any notice required or permitted to be given by Mortgagor or Mortgagee under this Mortgage shall be in writing and will be deemed given (a) upon personal delivery, (b) on the first business day after receipted delivery to a courier service which guarantees next business day delivery, or (c) on the third business day after mailing, by registered or certified United States mail, postage prepaid, in any case to the appropriate party at its address set forth below:

If to Mortgagor:

Market Street Properties, LLC

Attn:   John Mannone

With copy to:

      Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
      601 Poydras Street, Suite 2775
      New Orleans, LA 70130
      Attn:   Stewart F. Peck, Esq.

If to Mortgagee:

      MSP Finance, LLC

      Attn: Dennis Sunshine

With a copy to:

      Ruskin Moscou Faltischek, P.C.
      1425 RXR Plaza
      East Tower, 15th Floor
      Uniondale, NY 11561
      Attn: Jeffrey A. Wurst, Esq.

Either party may change such party's address for notices or copies of notices by giving notice to the other party in accordance with this Section.

8.11   Defeasance.  Upon payment and performance in full of all of the Secured Obligations, Mortgagee will execute and deliver to Mortgagor such documents as may be required to release this Mortgage of record.

8.12   Illegality.  If any provision of this Mortgage is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Mortgage, the legality, validity, and enforceability of the remaining provisions of this Mortgage shall not be affected thereby, and in lieu of each such illegal, invalid or unenforceable provision there shall be added automatically as a part of this Mortgage a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and be legal, valid, and enforceable.  If the rights and liens created by this Mortgage shall be invalid or unenforceable as to any part of the Secured Obligations, then the unsecured portion of the Secured Obligations shall be completely paid prior to the payment of the remaining and secured portion of the Secured Obligations, and all payments made on the Secured Obligations shall be considered to have been paid on and applied first to the complete payment of the unsecured portion of the Secured Obligations.

8.13   Usury Savings Clause.  It is expressly stipulated and agreed to be the intent of Mortgagee and Mortgagor at all times to comply with the applicable law governing the highest lawful interest rate.  If the applicable law is ever judicially interpreted so as to render usurious any amount called for under the Note or under any of the other Loan Documents, or contracted for, charged, taken, reserved or received with

respect to the loan evidenced thereby, or if acceleration of the maturity of the Note, any prepayment by Mortgagor, or any other circumstance whatsoever, results in Mortgagor having paid any interest in excess of that permitted by applicable law, then it is the express intent of Mortgagor and Mortgagee that all excess amounts theretofore collected by Mortgagee be credited on the principal balance of the Note (or, at Mortgagee's option, paid over to Mortgagor), and the provisions of the Note and other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder. The right to accelerate maturity of the Note does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Mortgagee does not intend to collect any unearned interest in the event of acceleration. All sums paid or agreed to be paid to Mortgagee for the use, forbearance or detention of the Secured Obligations evidenced hereby or by the Note shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of such Secured Obligations until payment in full so that the rate or amount of interest on account of such Secured Obligations does not exceed the maximum rate or amount of interest permitted under applicable law. The term "applicable law" as used herein shall mean any federal or state law applicable to the loan made by Mortgagee to Mortgagor evidenced by the Note.

8.14    Obligations Binding Upon Mortgagor's Successors. This Mortgage is binding upon Mortgagor and Mortgagor's successors and assigns, and shall inure to the benefit of Mortgagee, and its successors and assigns, and the provisions hereof shall likewise be covenants running with the land. The duties, covenants, conditions, obligations, and warranties of Mortgagor in this Mortgage shall be joint and several obligations of Mortgagor and Mortgagor's successors and assigns.

8.15    Construction. All pronouns and any variations of pronouns herein shall be deemed to refer to the masculine, feminine, or neuter, singular or plural, as the identity of the parties may require. Whenever the terms herein are singular, the same shall be deemed to mean the plural, as the identity of the parties or the context requires.

8.16    Attorneys' Fees. Any reference in this Mortgage to attorneys' or counsel fees paid or incurred by Mortgagee shall be deemed to include paralegals' fees and legal assistants' fees. Moreover, wherever provision is made herein for payment of attorneys' or counsel's fees or expenses incurred by Mortgagee, such provision shall include but not be limited to, such fees or expenses incurred in any and all judicial, bankruptcy, reorganization, administrative, or other proceedings, including appellate proceedings, whether such fees or expenses arise before proceedings are commenced, during such proceedings or after entry of a final judgment.

8.17    Waiver and Agreement. MORTGAGOR HEREBY EXPRESSLY WAIVES ANY RIGHT IT MAY HAVE UNDER APPLICABLE LAW TO PREPAY THE NOTE, IN WHOLE OR IN PART, WITHOUT PREPAYMENT CHARGE, UPON ACCELERATION OF THE MATURITY DATE OF THE NOTE, AND AGREES

THAT, IF FOR ANY REASON A PREPAYMENT OF ALL OR ANY PART OF THE NOTE IS MADE, WHETHER VOLUNTARILY OR FOLLOWING ANY ACCELERATION OF THE MATURITY DATE OF THE NOTE BY MORTGAGEE ON ACCOUNT OF THE OCCURRENCE OF ANY EVENT OF DEFAULT ARISING FOR ANY REASON, INCLUDING, WITHOUT LIMITATION, AS A RESULT OF ANY PROHIBITED OR RESTRICTED TRANSFER, FURTHER ENCUMBRANCE OR DISPOSITION OF THE PROPERTY OR ANY PART THEREOF SECURING THE NOTE, THEN MORTGAGOR SHALL BE OBLIGATED TO PAY, CONCURRENTLY WITH SUCH PREPAYMENT, THE PREPAYMENT PREMIUM PROVIDED FOR IN THE NOTE (OR, IN THE EVENT OF ACCELERATION WHEN THE NOTE IS CLOSED TO PREPAYMENT, AS PROVIDED IN THE DEFINITION OF "SECURED OBLIGATIONS" SET FORTH IN ARTICLE 1 HEREOF). MORTGAGOR HEREBY DECLARES THAT MORTGAGEE'S AGREEMENT TO MAKE THE LOAN EVIDENCED BY THE NOTE AT THE INTEREST RATE AND FOR THE TERM SET FORTH IN THE NOTE CONSTITUTES ADEQUATE CONSIDERATION, GIVEN INDIVIDUAL WEIGHT BY MORTGAGOR, FOR THIS WAIVER AND AGREEMENT.

8.18   Waiver of Jury Trial.   MORTGAGEE AND MORTGAGOR KNOWINGLY, IRREVOCABLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, PROCEEDING OR COUNTERCLAIM BASED ON THIS MORTGAGE, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE OR ANY LOAN DOCUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY HERETO OR TO ANY LOAN DOCUMENT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR MORTGAGEE AND MORTGAGOR TO ENTER INTO THE LOAN TRANSACTION EVIDENCED BY THE NOTE.

8.19   Governing Laws.   The substantive laws of the State of Louisiana shall govern the validity, construction, enforcement and interpretation of this Mortgage.

The certificate of mortgages required by Article 3364 of the Revised Civil Code of Louisiana is hereby dispensed with by the consent of the parties hereto.

Thus done, read, and passed at my office, in the Parish and State aforesaid, in the presence of the two undersigned competent witnesses, who have hereunto signed their names with the Mortgagor and me, said Notary, on the day, month, and year first above written.

WITNESSES:

MORTGAGOR:
MARKET STREET PROPERTIES, LLC
A Louisiana limited liability company

_____

By:_____

Name:

Name:
Title:

_____

Name:

_____

Notary Public

## MORTGAGE NOTE

**$750,000**                                                                June ___, 2010

For value received, Market Street Properties, L.L.C., a limited liability company organized under the laws of Louisiana (the "Borrower"), promises to pay to the order of MSP Finance, LLC, a limited liability company organized under the laws of the New York (the "Lender"), the principal amount of up to Seven Hundred Fifty Thousand Dollars ($750,000), or such lesser amount advanced or deemed to be advanced by Lender pursuant to an approved budget and in Lender's discretion, on or before the earlier of (i) November 15, 2010; or (ii) the effective date of a plan of reorganization which has been confirmed by an order of the Bankruptcy Court (the "Maturity Date"), as set forth below, together with interest from the date hereof on the unpaid principal balance from time to time outstanding until paid in full.

This Mortgage Note (the "Note") is secured by that certain Mortgage and Security Agreement of even date herewith.

The aggregate principal balance outstanding shall bear interest thereon on the last day of each month at a rate equal to One and One-Half Percent (1.5%) per month or partial month, and will be paid on demand, or if no demand is made, on the Maturity Date.  On the Maturity Date, the entire unpaid principal balance of this Note and all unpaid interest, costs, and fees accrued thereon shall also be fully due and payable.

Any payments received by the Lender on account of this Note shall be applied first, to accrued and unpaid interest; second, to the unpaid principal balance hereof; and third to any costs, expenses or charges then owed to the Lender by the Borrower.

If, pursuant to the terms of this Note, the Borrower is at any time obligated to pay interest on the principal balance at a rate in excess of the maximum interest rate permitted by applicable law for the loan evidenced by this Note, the applicable interest rate shall be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder.

The Borrower and each endorser and guarantor of this Note agree to pay, upon demand, costs of collection of all amounts under this Note including, without limitation, principal and interest, or in connection with the enforcement of, or realization on, any security for this Note, including, without limitation, to the extent permitted by applicable law, reasonable attorneys' fees and expenses.  Upon the occurrence and during the continuance of an event of default hereunder or under the Mortgage, interest shall accrue at a rate per annum equal to the aggregate of 300 basis points plus the rate provided for herein, and Lender may, in its sole discretion, declare the entire unpaid principal balance, plus accrued interest and other sums due hereunder immediately due and payable.

This Note shall be binding upon the Borrower and each endorser and guarantor hereof and upon their respective heirs, successors, assigns and legal representatives, and shall inure to the benefit of the Lender and its successors, endorsees and assigns.

The liabilities of the Borrower and any endorser or guarantor of this Note are joint and several; provided, however, the release by the Lender of the Borrower or any one or more

487338

endorsers or guarantors shall not release any other person obligated on account of this Note. Any and all present and future debts of the Borrower to any endorser or guarantor of this Note are subordinated to the full payment and performance of all present and future debts and obligations of the Borrower to the Lender. Each reference in this Note to the Borrower, any endorser, and any guarantor, is to such person individually and also to all such persons jointly. No person obligated on account of this Note may seek contribution from any other person also obligated, unless and until all liabilities, obligations and indebtedness to the Lender of the person from whom contribution is sought have been irrevocably satisfied in full.

This Note shall be governed by the laws of the State of Louisiana without giving effect to the conflicts of laws principles thereof.

Each of the Borrower and each endorser and guarantor hereby consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to the Borrower's, endorser's or guarantor's address shown below or as notified to the Lender and (ii) by serving the same upon the Borrower(s), endorser(s) or guarantor(s) in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Borrower or such endorser or guarantor.

THE BORROWER, EACH ENDORSER AND GUARANTOR AND THE LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVES ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS NOTE, ANY OF THE OBLIGATIONS OF THE BORROWER, EACH ENDORSER AND GUARANTOR TO THE LENDER, AND ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREES NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN, WAIVED. THE BORROWER, EACH ENDORSER AND GUARANTOR AND THE LENDER EACH CERTIFIES THAT NEITHER THE LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.

Executed as of June __, 2010.

WITNESSES:                          MORTGAGOR:
                                    MARKET STREET PROPERTIES, LLC
                                    A Louisiana limited liability company

                                    By:_____
_____
Name:                               Name:
                                    Title:


_____
Name:


                          _____
                          Notary Public


487338                              2